IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILTON KARRIEM MINCY,<br>    Plaintiff<br><br>v.<br><br>WILLIAM P. McCONNELL, et al.,<br>    Defendants. | C.A. No. 09-236 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' Partial Motion to Dismiss [Document # 21] be granted in part and denied in part.

### II.    REPORT

#### A.    Relevant Procedural History

Plaintiff Hilton Karriem Mincy, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1] Named as Defendants are the following former or current staff members at SCI-Albion, identified by the positions they held at the time Plaintiff was incarcerated there: William P. McConnell, Security Lieutenant ("McConnell"); K. Sutter, Security Lieutenant ("Sutter"); B. Schaef, Sergeant ("Schaef"); R. Showers, Unit Manager ("Showers"); William Cole, Hearing Examiner ("Cole"); Nancy A. Giroux, Deputy Superintendent ("Giroux"); Michael Harlow, Deputy Superintendent ("Harlow"); Marilyn Brooks, Superintendent ("Brooks"); Valerie Kusiak, Grievance Coordinator ("Kusiak"); Maxine Overton, Medical Director ("Overton"); and Mr. Lucas, Registered Nurse (Lucas").

Plaintiff claims that Defendants violated his rights under the first and fourteenth

---

[1] Plaintiff is currently incarcerated at the Clinton County Prison in McElhattan, Pennsylvania.

Amendments to the United States Constitution, and Article 1, §§ 1, 20, and 26 of the Pennsylvania Constitution. In addition, Plaintiff raises claims of intentional tort and/or negligence against Defendants Overton and Lucas for allegedly aiding and abetting the issuance of three "falsified and retaliatory misconduct(s)" against him. (Id. at p. 9). As relief for his claims, Plaintiff seeks monetary damages and injunctive relief.

In response, Defendants have filed a partial motion to dismiss, seeking dismissal of Defendants Sutter, Schaef, Showers, Cole, Giroux, Harlow, Brooks, and Kusiak from this case, based upon: (i) Plaintiff's alleged failure to establish their personal involvement in the challenged conduct; and/or (ii) qualified immunity. [Document # 21]. Plaintiff has since filed a memorandum in opposition to Defendants' motion (hereinafter referred to as "memorandum"). [Document # 25]. This matter is now ripe for consideration.

### B. Relevant Factual History

In his complaint, Plaintiff alleges that, upon his arrival at SCI Albion, he was "immediately subjected to: (1) harassment, (2) intimidation tactics, (3) threats, (4) verbal abuse, (5) usage of racial epithet[s], and (6) intentional abuse of administrative process (which was carried out to keep the Plaintiff incarcerated in the Restricted Housing Unit)." (Complaint at Section IV, p. 2B). Plaintiff claims that such conduct was carried out "at the bequest [sic] of SCI Albion's security lieutenants... mostly in part to Plaintiff's prison records having stated he had pending civil litigation against SCI Mahanoy's officers and administrative staff." (Id.). Plaintiff alleges that "[a]s a result of the actions of SCI Albion's security lieutenants and its administrative staff's refusal to intervene, Plaintiff was threatened and forced to recant his allegations against SCI Mahanoy's officers and staff in order to be released from SCI Albion's Restricted Housing Unit." Plaintiff then filed grievances regarding the foregoing conduct, which, according to Plaintiff, resulted in the issuance of three (3) "retaliatory misconducts" against him, "one of which was directly issued by [Defendant McConnell]," who had allegedly stated that he "would

2

either personally have Plaintiff punished or would use other officers and staff to do so, if Plaintiff took to any litigation activities while at SCI Albion as he had done at SCI Mahanoy." (Id. at pp. 2C -2D).

Plaintiff avers that "SCI Albion's administrative staff was fully aware of Security Lieutenant William P. McConnell's retaliatory tendencies towards inmates who conduct civil litigations, and, or file grievances..., and intentionally failed to take meaningful administrative action against Lieutenant McConnell to protect Plaintiff from his behavior." (Id. at p. 3). Plaintiff avers further that "SCI Albion's administrative staff was fully aware of Security Lieutenant McConnell's racially motivated abusive behavior, specifically aimed at African-Americans, and intentionally failed to take meaningful administrative action to protect Plaintiff from his racially motivated behavior." (Id.).

### C.     Standards of Review
#### 1.     Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations.

3

Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

4

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Personal Involvement

Defendants argue that Plaintiff has failed to make any specific allegations against Defendants Sutter, Schaef, Showers, Cole, Giroux, Harlow, Brooks, and Kusiak, and, thus, has failed to establish that any of these Defendants were personally involved in the alleged retaliatory conduct of which Plaintiff complains. The Court agrees that Plaintiff fails to identify any of the foregoing Defendants by name in the body of the complaint; however, Plaintiff does allege that the retaliatory abuse and harassment he allegedly suffered immediately upon his arrival at SCI-Albion was done at the "bequest [sic] of SCI Albion's security lieutenants," and that "[a]s a

5

result of the actions of SCI Albion's security lieutenants... Plaintiff was threatened and forced to recant his allegations against SCI Mahanoy's officers and staff...." (Complaint at Section IV, pp. 2B-2C). Construing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff's repeated use of the term "security lieutenants," in the plural tense, is intended to implicate both Defendants McConnell and Sutter, even though Defendant Sutter is not otherwise identified by name. Moreover, the foregoing allegations are sufficient to show that Defendant Sutter, as one of the "security lieutenants," was personally involved in the alleged retaliatory conduct. Accordingly, Defendants' motion to dismiss Defendant Sutter from this case, based upon his alleged lack of personal involvement, should be denied.

With regard to Defendant Schaef, although Plaintiff fails to identify him by name in the body of the complaint, he does clarify in his memorandum that Defendant Schaef was the author of the other two "retaliatory misconducts" that were not issued by Defendant McConnell. (See Document # 25 at p. 2). This clarification will be accepted by the Court as an amendment to the corresponding allegation in the complaint that Plaintiff "received three (3) retaliatory misconducts, one of which was directly issued by [Defendant McConnell], the other two (2) misconducts were the direct result of SCI Albion's security office efforts of having Plaintiff punished" for pursuing "litigation activities while at SCI Albion as he had done at SCI Mahanoy." (See Complaint at Section IV, pp. 2C-2D). This allegation, as amended, is sufficient to implicate Defendant Schaef's direct participation in the alleged retaliatory conduct being challenged by Plaintiff. As a result, Defendants' motion to dismiss Defendant Schaef from this case, based upon his alleged lack of personal involvement, should be denied.

Similarly, while Defendants Harlow, Giroux, and Brooks are not mentioned by name in the body of the complaint, Plaintiff's memorandum specifically identifies the members of SCI Albion's "administrative staff," to whom he refers numerous times in his complaint, as Defendants Harlow, Giroux, and Brooks. (See Document # 25 at p. 4). Accordingly, the Court will accept this clarification as an amendment to the complaint, such that all references in the

complaint to "administrative staff" shall be construed as including Defendants Harlow, Giroux, and Brooks, each of whom was a supervisory official at SCI-Albion at the time of their alleged conduct.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). At a minimum, such liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior patten of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id. If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006). However, a supervisory official can be found liable under § 1983 if it is shown that he had knowledge of and acquiesced in his subordinates' violations. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997).

Here, Plaintiff makes the following pertinent allegations against Defendants Harlow, Giroux, and Brooks (referred to collectively in the complaint as "administrative staff"):

> ... SCI Albion's administrative staff was fully aware of [Defendant McConnell's] retaliatory tendencies towards inmates who conduct civil litigations, and, or file grievances (from grievances, civil actions, and complaints filed against him), and intentionally failed to take meaningful administrative action against [Defendant McConnell] to protect Plaintiff from his behavior.
>
> Additionally, Plaintiff avers that SCI Albion's administrative staff was fully aware of [Defendant McConnell's] racially motivated abusive behavior, specifically aimed at African-Americans, and intentionally failed to take meaningful administrative action to protect Plaintiff from his racially motivated behavior.

(Complaint at Section IV, p. 3).

As can be seen from the foregoing, Plaintiff has not alleged that Defendants Harlow, Giroux, or Brooks were, in any way, personally involved in the harassment or retaliation of

7

which he complains. However, Plaintiff does allege that these Defendants were aware of Defendant McConnell's "retaliatory tendencies" and "racially motivated abusive behavior," yet failed to take any corrective action. This awareness is alleged to have come from numerous "grievances, civil actions, and complaints" that were allegedly filed against Defendant McConnell, presumably by Plaintiff and other inmates. Construed in the light most favorable to Plaintiff, these allegations are sufficient to show that these Defendants had knowledge of and essentially acquiesced in their subordinates' complained-of misconduct. See Porter v. Beard, 2010 WL 2573878 at * 3 (W.D.Pa. May 12, 2010)("prior complaints made by a prisoner, whether in the form of a grievance or otherwise, may be sufficient to place a prison official on notice of alleged continuing abuse by prison staff and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims"). Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants Harlow, Giroux, and Brooks, based upon their alleged lack of personal involvement, should be denied.

Finally, with regard to Defendants Showers, Cole, and Kusiak, the Court finds that Plaintiff has not identified any of these Defendants by name, nor has he made any specific allegations against any of them, either in the body of his complaint or in his memorandum. Thus, Plaintiff is unable to establish that any of these Defendants had any personal involvement in the alleged retaliatory conduct at issue in this case. Accordingly, Defendants' motion to dismiss Defendants Showers, Cole, and Kusiak from this case should be granted.

### 2. **Qualified Immunity**

Defendants alternatively contend that Plaintiff's claims against them should be dismissed based on the doctrine of qualified immunity. The doctrine of qualified immunity insulates government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002).[2] The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 (2004).

The analytical framework that district courts have previously employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 536 U.S. 730; Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).

However, the rigid two-step inquiry set forth in Saucier was relaxed by the Supreme Court in Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (Jan. 21, 2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. March 6, 2009). As the Supreme Court explained: "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district

---

[2] In other words, "[w]hen an officer's actions give rise to a §1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them from undue interference with their duties and from potentially disabling threats of liability. The privilege of qualified immunity, however, can be overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (internal citations omitted).

9

courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, ___ U.S. at ___, 129 S.Ct. at 821.

Another district court within this Circuit recently summarized the current state of the *Saucier* framework in the post-*Pearson* era:

> By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate, the Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." In addition, "[a]lthough the first prong of the *Saucier* procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

DeLauri v. New Jersey Div. of State Police, 2009 WL 222983, at *5 (D.N.J., Jan. 27, 2009), quoting Pearson, ___ U.S. at ___, 129 S.Ct. at 818-20. See also Newland v. Reehorst, 2009 WL 1298414, at *2 (3d Cir. May 12, 2009) (proceeding directly to the second step of the *Saucier* analysis).

At this early stage of the proceeding, the Court finds that there is a genuine issue of material fact as to the first prong of the *Saucier* test - whether Defendants' alleged conduct violated Plaintiff's constitutional rights. As a result, this Court will proceed straight to the second prong of the *Saucier* analysis - whether the right claimed by Plaintiff was "clearly established" at the time of the alleged conduct.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is

10

doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope, 536 U.S. at 739 (citations omitted). In other words, "to be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right." Karnes v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995).

Here, Plaintiff has alleged, with regard to Defendants Schaef and Sutter, that the three "retaliatory misconducts" were issued as a "direct result of SCI Albion's security office efforts of having Plaintiff punished" for filing a civil action against officers and staff at SCI Mahanoy, as well as grievances and complaints at SCI Albion. It has long been established that "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). The Third Circuit has since clarified that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)(emphasis added). Thus, it was clearly established at the time of the alleged conduct of Defendants Schaef and Sutter that the contours of the law defining retaliation included acts motivated, in substantial part, by a desire to punish a prisoner for his exercise of a constitutional right. Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants Sutter and Schaef, based on qualified immunity, should be denied.

With regard to Plaintiff's claims against Defendants Harlow, Giroux, and Brooks, as previously discussed, the Third Circuit Court has long held that liability may be imposed against a supervisory official "where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which

the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Chinchello, 805 F.2d at 133. Thus, at the time of the alleged conduct of Defendants Harlow, Giroux, and Brooks, the case law was clearly defined regarding the potential liability of supervisory officials, including circumstances in which the officials had knowledge of and essentially acquiesced in their subordinates' complained-of misconduct, as Plaintiff alleges here. Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants Harlow, Giroux, and Brooks, based on qualified immunity, should also be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Partial Motion to Dismiss [Document # 21] be granted in part and denied in part, as follows:

1. Defendants' motion should be granted with regard to Defendants Showers, Cole, and Kusiak, and said Defendants should be dismissed from this case due to Plaintiff's failure to allege their personal involvement in the challenged conduct; and

2. Defendants' motion should be denied with regard to Defendants Sutter, Schaef, Harlow, Giroux, and Brooks, and Plaintiff's claims against these Defendants should be allowed to proceed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 15, 2010
cc: The Honorable Sean J. McLaughlin
United States District Judge

12