**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HILTON KARRIEM MINCY, | ) | |
| Plaintiff | ) | C.A. No. 09-236 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| WILLIAM P. McCONNELL, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss [ECF No. 74] be

granted in part and denied in part, and that Plaintiff's motion for summary judgment [ECF No.

77] be denied without prejudice.

## II.     REPORT

### A.     Relevant Procedural History

Plaintiff Hilton Karriem Mincy, a prisoner formerly incarcerated at the State

Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights

action pursuant to 42 U.S.C. § 1983, on September 10, 2009.[1]  Originally named as Defendants

were the following former or current staff members at SCI-Albion, identified by the positions

they held at the time Plaintiff was incarcerated there:  William P. McConnell, Security Lieutenant

("McConnell"); K. Sutter, Security Lieutenant ("Sutter"); B. Schaef, Sergeant ("Schaef"); R.

Showers, Unit Manager ("Showers"); William Cole, Hearing Examiner ("Cole"); Nancy A.

---

[1]

Plaintiff is currently incarcerated at the State Correctional Institution at Rockview in Bellefonte, Pennsylvania.

Giroux, Deputy Superintendent ("Giroux"); Michael Harlow, Deputy Superintendent ("Harlow");

Marilyn Brooks, Superintendent ("Brooks"); Valerie Kusiak, Grievance Coordinator ("Kusiak");

Maxine Overton, Medical Director ("Overton"); and Mr. Lucas, Registered Nurse (Lucas").

On August 6, 2010, District Judge Sean J. McLaughlin issued a Memorandum Order adopting this Court's Report and Recommendation dated July 15, 2010, and dismissing Plaintiff's claims against Defendants Showers, Cole, and Kusiak. [ECF No. 28]. As a result, said Defendants were terminated from this case. Plaintiff subsequently filed an amended complaint on March 11, 2011, and a second amended complaint on June 20, 2011 [ECF No. 72], the latter being the operative pleading in this case. Named as Defendants in both the amended and second amended complaints are McConnell, Brooks, Harlow, and Giroux. Original Defendants Sutter, Schaef, Overton, and Lucas, are no longer named as Defendants and have, thus, been terminated from this case.

In his second amended complaint, Plaintiff claims that Defendants violated his rights under the first and fourteenth amendments to the United States Constitution, and Article 1, §§ 20 and 26 of the Pennsylvania Constitution. In particular, Plaintiff claims that Defendant McConnell retaliated against him for the exercise of his First Amendment rights by (i) forcing him to recant allegations in his pending civil suit against other DOC employees at SCI-Mahanoy, in order to be released from SCI-Albion's restricted housing unit ("RHU"); (ii) forcing him to serve an additional week in the RHU; and (iii) issuing a false misconduct against him. Plaintiff further asserts this retaliation claim against Defendants Brooks, Harlow, and Giroux, because they were "on notice" of Defendant McConnell's actions but did nothing. In addition, Plaintiff claims that Defendant Brooks denied his grievances in a "rote and arbitrary manner" in violation of his Fourteenth Amendment due process rights, and that Defendants violated his equal protection rights under the Fourteenth Amendment and the Pennsylvania Constitution because Defendant McConnell's alleged retaliatory acts were motivated by Plaintiff's race. As relief for

his claims, Plaintiff seeks monetary damages.

Defendants have filed a motion to dismiss [ECF No. 74], arguing that (i) Plaintiff's claims against Defendants Brooks and Harlow should be dismissed because they have been procedurally defaulted; (ii) Plaintiff has failed to state a retaliation claim upon which relief may be granted; (iii) Plaintiff has failed to state a cognizable Fourteenth Amendment equal protection claim; (iv) Plaintiff has failed to adequately allege the personal involvement of Defendants Brooks, Harlow, and Giroux; and (v) Plaintiff has failed to allege "actual injury" and, thus, his recovery, if any, should be limited to nominal damages. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 82]. In addition, Plaintiff has filed a motion for summary judgment as to his retaliation claims [ECF No. 77], to which Defendants have filed a response. [ECF No. 90]. This matter is now ripe for consideration.

### B.    Relevant Factual History

On September 13, 2006, Plaintiff was interviewed by Defendant McConnell to determine whether he would be released from Administrative Custody ("AC") status back to general population. (ECF No. 72, Second Amended Complaint, at Count 1, ¶ 1). Plaintiff took with him to the interview a written statement that he had prepared regarding retaliatory actions officers and staff at SCI-Mahanoy allegedly took against him, which led Plaintiff to seek a separation transfer to SCI-Albion; however, Defendant McConnell refused to take the statement from Plaintiff or to hear Plaintiff read from it. (Id. at Count 1, ¶¶ 2-4). Plaintiff alleges that Defendant McConnell then accused him of lying, stating that DOC officers and staff would never retaliate against an inmate. (Id. at Count 1, ¶ 5). When Plaintiff offered to show Defendant McConnell documentary proof of his claims against the officers and staff at SCI-Mahanoy, Defendant McConnell allegedly told Plaintiff his "documented proof meant nothing to him, and that he, Lieutenant McConnell has been sued by inmates before." (Id. at Count 1, ¶ 6).

Plaintiff alleges that he then requested to have either an attorney or stenographer present during the interview, at which point Defendant McConnell allegedly "became very agitated and started referring to Plaintiff as 'boy,' which was used in a derogatory and racially motivated manner, and in an effort to provoke Plaintiff so that he could issue Plaintiff a misconduct and keep him in solitary confinement in the [RHU]." (Id. at Count 1, ¶¶ 7-9). Plaintiff claims that Defendant McConnell then threatened him by stating "'you better tell me something if you want to get out of the hole.'" (Id. at Count 1, ¶ 10). Plaintiff alleges that he interpreted this threat to mean that he better say what Defendant McConnell wanted him to say in order to get out of the RHU. (Id.). Because Plaintiff had already been in the RHU for approximately 18 months, he alleges that he told Defendant McConnell what he wanted to hear – that his lawsuits against DOC officers and staff members "were all lies," that they "never acted inappropriately," and that he "had made threats to kill those officers and staff members involved in those litigations." (Id. at Count 1, ¶¶ 11-12). According to Plaintiff, Defendant McConnell responded by smiling and nodding his head in agreement as he wrote Plaintiff's statements down, stating, "see Mincy this is what you need to tell me if you want to get out of the hole." (Id. at Count 1, ¶ 12). Then, at the conclusion of the interview, Plaintiff alleges that Defendant McConnell told him "if he ever hear[d] of the Plaintiff taking to any litigation activities at SCI Albion, like he did at SCI Mahanoy... [he] would have the Plaintiff harassed by his officers and staff, and ... would have the Plaintiff 'buried' in the 'hole' (RHU)." (Id. at Count 1, ¶ 13).

On September 14, 2006, Plaintiff wrote a four page "legal memo" to Defendant McConnell, attaching the two page statement that Defendant McConnell refused to accept, "in order to document what happened at the interview, and to protect Plaintiff's rights in his pending civil litigations against [DOC employees]." (Id. at Count 1, at ¶¶ 14-15). The next day, September 15, 2006, Plaintiff filed grievance # 164317 against Defendants McConnell and Giroux, as well as SCI Albion's security and administrative staff, regarding Defendant

McConnell's alleged conduct at the interview and challenging an extra week of confinement in the RHU that was allegedly recommended and implemented by Defendant McConnell "because Plaintiff 'likes' to file grievances, and because Plaintiff verbally defended himself against Security Lieutenant Sutter." (Id. at Count 1, ¶ 16).

On September 18, 2006, Plaintiff sent a request slip to Defendant Giroux and the Program Review Committee ("PRC") complaining about Defendant McConnell's actions. (Id. at Count 1, ¶ 17). On September 19, 2006, Plaintiff was released from the RHU to general population. (Id. at Count 1, ¶ 18). On the same day, Plaintiff sent a request slip to Defendant Brooks asking why he had not received a response to his administrative custody appeal. (Id. at Count 1, ¶ 19).

On September 24, 2006, Plaintiff was issued misconduct #A839577 by Defendant McConnell for lying to an employee and unauthorized use of the mail or telephone with regard to the letter Plaintiff had sent him on September 14, 2006. (Id. at Count 1, ¶¶ 20-21; Exhibit 13A). In the misconduct, Defendant McConnell denied referring to Plaintiff in a "derogatory and racially motivated manner" by calling him "boy" during the interview of September 13, 2006. (Id. at Count 1, ¶ 22). The next day, Plaintiff filed grievance # 165088 against Defendant McConnell alleging that the foregoing misconduct was issued in retaliation for Plaintiff's exercise of his First Amendment rights. (Id. at Count 1, ¶ 25). A hearing on the misconduct was held on September 26, 2006, at which Plaintiff was found guilty and returned to the RHU. (Id. at Count 1, ¶¶ 26-30). Plaintiff's subsequent appeals of the misconduct were denied by the PRC and Defendant Brooks, respectively. (Id. at ¶¶ 34, 35, 38).

On October 2, 2006, Plaintiff's grievance #164317 was denied, and grievance #165088 was rejected as having been previously reviewed and addressed in grievance #164317. (Id. at Count 1, ¶¶ 31-32). Plaintiff appealed both grievances to Defendant Brooks, and both appeals were denied.. (Id. at Count 1, ¶ 33, 43, 44). Plaintiff claims to have subsequently exhausted both

5

appeals to the Chief Grievance Coordinator at Camp Hill, Pennsylvania. (Id. at ¶ 35).

**C.**     **Standards of Review**

**1.**     **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

> The Third Circuit has expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:
>
>> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>>
>> * * *
>>
>> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  **First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.**  A complaint has to "show" such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).


## 2. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322.  See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion

**1.      Exhaustion of Administrative Remedies**

**a.      The Exhaustion Requirement**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:
> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id[2] (emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required

---

[2]

It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[3]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that ¢1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### b.      The Administrative Process Available to State Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper

---

[4]

There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

exhaustion." <u>Jones v. Bock</u>, 107 U.S. at 217.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages.  First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days.  Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days.  Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days.  See <u>Booth v. Churner</u>, 206 F.3d 289, 293 n.2 (3d Cir. 1997), <u>aff'd</u>. 532 U.S. 731 (2001).

### <u>c.</u>      <u>Analysis</u>

Here, Defendants have conceded that Plaintiff exhausted his administrative remedies with regard to the operative grievances at issue in this case – grievance nos. 164317 and 165088; however, Defendants assert that Plaintiff has procedurally defaulted his claims against Defendants Brooks and Harlow because neither was specifically identified in either of the exhausted grievances.

Failure to name a Defendant at any time in the grievance procedure constitutes a procedural default.  <u>Spruill</u>, 372 F.3d at 234.  The requirement of naming a Defendant at the first opportunity available during the grievance proceedings effectuates the goal of putting the prison officials on notice of the persons claimed to be guilty of wrongdoing, as was explained by the Third Circuit Court in <u>Spruill</u>: "[t]he purpose of the regulation here [i.e., regarding the initial grievance] is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing."  Id.  <u>Accord</u> <u>Williams v. Pennsylvania, Dept. of Corrections</u>, 146 Fed. App'x 554, 557 (3d Cir.2005)( "[the prisoner's] failure to identify defendants in either of his two grievances,

means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."); Wishnefsky v Salameh, 2011 WL 338117, at *4 (W.D.Pa. Jan. 11, 2011)(same); Buehl v. Beard, 2007 WL 1830616 (W.D.Pa. June 25, 2007) (same).

In this case, Defendants have submitted a number of exhibits to show that Plaintiff failed to name either Defendant Brooks or Defendant Harlow at any time during the processing of grievance nos. 164317 and 165088 (see ECF No. 74-2); however, these exhibits are not accompanied by a sworn declaration certifying that they constitute a complete and accurate record of Plaintiff's grievance proceedings, or that Plaintiff failed to name either of said Defendants at any time during the grievance process. Absent such authentication, this Court cannot rely on such exhibits to definitively conclude that Plaintiff has procedurally defaulted his claims against Defendants Brooks and Harlow. Accordingly, Defendants' motion to dismiss in this regard should be denied.

## 2. Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:
    1) the conduct in which he was engaged was constitutionally protected;

    2) he suffered "adverse action" at the hands of prison officials[5]; and

---

[5]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d

> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff has alleged three incidents of retaliation stemming from his September 13, 2006, interview with Defendant McConnell, which may be summarized as follows: (i) Defendant McConnell allegedly forced Plaintiff to recant his allegations in his pending civil suits against DOC employees at SCI-Mahanoy, in order to be released to general population (ECF No. 72, Second Amended Complaint, at Count 1, ¶¶ 10-13); (ii) Plaintiff was allegedly forced to serve an additional week in the RHU at Defendant McConnell's recommendation and direction (Id. at Count 1, ¶¶ 16 and 18); and (iii) Defendant McConnell issued an allegedly false misconduct against Plaintiff for lying about what occurred during the interview of September 13,

---

520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

2006 (Id. at Count 1, ¶¶ 16-25).

Defendants concede that Plaintiff has met the first prong of his *prima facie* case. (See ECF No. 75, Defendants' Brief, at p. 9). It is also beyond dispute that the retaliatory actions allegedly taken against Plaintiff would be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," and were, thus, sufficiently "adverse" to satisfy the second prong of Plaintiff's *prima facie* case. Allah v. Seiverling, 229 F.3d at 225. In addition, Plaintiff has specifically alleged a direct causal link between his constitutionally protected activity and the alleged retaliatory actions, which is sufficient to satisfy the third prong of his *prima facie* case.

Nonetheless, Defendants contend that Plaintiff's retaliation claim fails to the extent that it is predicated upon the misconduct report that was issued against him by Defendant McConnell. In particular, Defendants argue that the fact that Plaintiff was found guilty of the challenged misconduct "essentially precludes any finding that the misconduct was issued by McConnell out of some retaliatory animus." (ECF No. 75, Defendants' Brief, at p. 10). The Court agrees. See Williams v Sebek, 2008 WL 859006, *8 (W.D.Pa. Mar. 31, 2008) ("the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance")(citations omitted). See also Carter, 292 F.3d 152 (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); King v. Barone, 2011 WL 3809940 at *7 (W.D.Pa. Aug. 4, 2011).

Thus, Plaintiff's retaliation claim should be dismissed insofar as it pertains to Defendant McConnell's issuance of a misconduct against Plaintiff for lying about what occurred at the interview of September 13, 2006.[6] However, the remaining portion of Plaintiff's retaliation claim

---

[6]

Although this determination is made at the pleadings stage, the Court notes that Plaintiff attached as part of his

relating to the forced recantation of his allegations against SCI-Mahanoy employees and the additional week in the RHU should be allowed to proceed beyond the pleading stage, as Defendants have failed to move for dismissal of the same.

### 3.    Personal Involvement

Defendants argue that Plaintiff has failed to establish that Defendants Brooks, Giroux, and Harlow were personally involved in the alleged retaliatory conduct of which Plaintiff complains.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  At a minimum, such liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  Id.  If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).  However, a supervisory official can be found liable under § 1983 if it is shown that he had knowledge of and acquiesced in his subordinates' violations.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997).

Here, Plaintiff makes the following allegations against Defendants Brooks, Harlow, and Giroux:

---

second amended complaint a copy of the misconduct report that was issued by Defendant McConnell (See ECF No. 72-1 at p. 42), and references the guilty finding in the body of the second amended complaint (ECF No. 72, Second Amended Complaint, at ¶¶27-30).  Thus, all facts necessary to make this determination have been made part of the record by Plaintiff.

39.     Defendant Brooks and Defendants Harlow and Giroux w[ere] on
        notice as to Defendant McConnell's retaliatory actions directed
        towards the plaintiff, and acquiesced in the said violation of
        Plaintiff's rights by and through [their] deliberate indifference and
        intentional failure to correct what was being perpetrated.

40.     Defendant Brooks and Defendants Harlow and Giroux w[ere] on
        notice as to Defendant McConnell's retaliatory animus directed
        towards inmates who file lawsuits and or grievances against
        officers and staff of the Pennsylvania Department of Corrections;
        by and through prior complaints, grievances, and or lawsuits filed
        against Defendant McConnell alleging that he has retaliated
        against inmates for the exercise of their protected rights.

41      Defendant Brooks and Defendants Harlow and Giroux w[ere] on
        notice as to Defendant McConnell's racist propensities directed
        towards African Americans, by and through prior complaints,
        grievances, and or lawsuits filed against Defendant McConnell
        alleging that he has used racial epithets towards or about African
        Americans....  Yet, and despite this [sic] known allegations,
        Defendant Brooks [and Defendants Harlow and Giroux] acted
        with deliberate indifference, and intentionally failed to take
        meaningful administrative action to protect Plaintiff.

(ECF No. 72, Second Amended Complaint, at ¶¶ 39-41).

        As can be seen from the foregoing, Plaintiff has not alleged that Defendants Harlow,

Giroux, or Brooks were, in any way, personally involved in the harassment or retaliation of

which he complains.  However, Plaintiff does allege that these Defendants were aware of

Defendant McConnell's "retaliatory animus" and "racist propensities directed towards African

Americans," yet failed to take any corrective action.  This awareness is alleged to have come

from "prior complaints, grievances, and/or lawsuits" that were allegedly filed against Defendant

McConnell, presumably by Plaintiff and other inmates.  Construed in the light most favorable to

Plaintiff, these allegations are sufficient to show that these Defendants had knowledge of and

essentially acquiesced in their subordinate's complained-of misconduct.  See Porter v. Beard,

2010 WL 2573878 at * 3 (W.D.Pa. May 12, 2010)("prior complaints made by a prisoner, whether

in the form of a grievance or otherwise, may be sufficient to place a prison official on notice of

alleged continuing abuse by prison staff and, therefore, may show actual knowledge of an alleged

17

constitutional violation and acquiescence in the events forming the basis of a prisoner's claims").

Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants Harlow, Giroux, and Brooks, based upon their alleged lack of personal involvement, should be denied.

### 4. Fourteenth Amendment Due Process Claim

Plaintiff claims that Defendant Brooks denied his grievances in a "rote and arbitrary manner" in violation of his Fourteenth Amendment due process rights. (See ECF No. 72, Second Amended Complaint, at ¶¶ 43, 44, 47, 48). Defendants move to dismiss this claim, arguing that prisoners are not legally entitled to a grievance process. The Court agrees.

It is well-settled that prisoners have no constitutional right to a grievance process, and a prison official's denial of an inmate's grievance does not constitute a due process violation. See Burnside v. Moser, 138 Fed. Appx. 414, 415 (3d Cir. 2005)(holding that a "state grievance procedure does not confer any substantive constitutional rights upon prison inmates"); Jackson v. Beard, 2008 WL 879923 at * 7 (E.D.Pa. Mar. 31, 2008)("inmate grievance procedures in themselves do not confer a liberty interest protected by the Due Process Clause"); Thibodeau v. Watts, 2006 WL 89213 at * 5 (M.D.Pa. Jan. 6, 2006)("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable"). Thus, Plaintiff's claim that his due process rights were violated by Defendant Brooks' denial of his grievances in a "rote and arbitrary manner" should be dismissed.

### 5. Fourteenth Amendment Equal Protection Claim

Plaintiff claims that Defendants violated his right to equal protection because "race was a motivating factor in which he was retaliated against" by Defendant McConnell. (ECF No. 72,

Second Amended Complaint, at Count III).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996), quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994). As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Here, Plaintiff merely alleges that Defendant McConnell alleged retaliation against him was racially motivated because he is African-American; however, he has not alleged any differential treatment between himself and similarly situated non-African-American prisoners. Thus, Plaintiff has failed to meet the threshold requirement of stating an equal protection claim, and such claim should be dismissed accordingly.

**6. The PLRA's "Actual Injury" Requirement**

Section 1997e(e) of the Prison Litigation Reform Act of 1995 ("PLRA"), provides that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury ... without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Based on this section, Defendants assert that to the extent Plaintiff states a cognizable claim, he is only entitled to seek recovery of nominal and/or punitive damages because he has not alleged an actual physical injury resulting from Defendants' alleged actions. The Court agrees.

The Third Circuit has held that "[s]ection 1997e(e)'s requirement that a prisoner must demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages." Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003). Thus, even in the absence of physical injury, section 1997e(e) still permits claims for nominal and punitive damages, as well as claims for declaratory and injunctive relief, arising from constitutional violations. Id. (holding further that section 1997e(e) does not bar a prisoner from seeking nominal or punitive damages for violations of his constitutional rights, nor does it apply to claims seeking injunctive or declaratory relief); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3d Cir. 2000)(holding that § 1997e(e) does not bar nominal and punitive damages for violations of constitutional rights even in the absence of physical injury).

Here, Plaintiff makes no assertion of actual physical injury resulting from Defendants' alleged actions. As a result, Plaintiff's claim for compensatory damages arising from Defendants' alleged misconduct should be dismissed in accordance with section 1997e(e) of the PLRA.

**7.**     **Plaintiff's Motion for Summary Judgment**

Plaintiff has moved for summary judgment against Defendants in their individual capacities as to his retaliation claim only. [ECF No. 77]. This Court has already recommended that Plaintiff's retaliation claim be dismissed to the extent it is based upon the alleged retaliatory misconduct that was issued by Defendant McConnell. Thus, the only remaining portion of Plaintiff's retaliation claim to be considered here relates to Plaintiff's allegations that (i) Defendant McConnell forced him to recant his allegations in his pending civil suits against DOC employees at SCI-Mahanoy, and (ii) he was forced to serve an additional week in SCI-Albion's RHU at the recommendation and direction of Defendant McConnell. As to these allegations, the record in this case is not sufficiently developed for this Court to find that there are no genuine issues of material fact. For this reason, Plaintiff's motion for summary judgment should be

denied without prejudice to Plaintiff's right to re-file said motion upon completion of discovery and supplementation of the record.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss [ECF No. 74] be granted in part and denied in part, as follows:

1. Defendants' motion should be granted with regard to Plaintiff's retaliation claim related to the alleged retaliatory misconduct issued by Defendant McConnell, and such claim should be dismissed;

2. Defendants' motion should be granted as to Plaintiff's Fourteenth Amendment due process and equal protection claims, and such claims should be dismissed;

3. Defendants' motion should be granted as to Plaintiff's claim for compensatory damages, as Plaintiff's recovery in this case, if any, should be limited to nominal and/or punitive damages;

4. Defendants' motion should be denied as to Defendants' argument that Plaintiff has failed to sufficiently allege the personal involvement of Defendants Brooks, Harlow, and Giroux; and

5. Defendants' motion should be denied as to Plaintiff's retaliation claim against all Defendants to the extent it relates to Plaintiff's allegations that (i) Defendant McConnell forced him to recant his allegations in his pending civil actions against DOC employees at SCI-Mahanoy; and (ii) Plaintiff was forced to serve an additional week in SCI-Albion's RHU at the recommendation and direction of Defendant McConnell.

It is further recommended that Plaintiff's motion for summary judgment [ECF No. 77] be denied without prejudice to Plaintiff's right to re-file a motion for summary judgment as to the same claim upon completion of discovery and supplementation of the record.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have

fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 22, 2011

cc:     The Honorable Sean J. McLaughlin
        United States District Judge